MICHAEL G. KING (SBN 145477)
SUSAN J. WILLIAMS (SBN 82976)
**HENNELLY & GROSSFELD LLP**
4640 Admiralty Way, Suite 850
Marina del Rey, CA 90292
Telephone: (310) 305-2100
Facsimile: (310) 305-2116
mking@hgla.com
swilliams@hgla.com

Attorneys for Plaintiff
MOVE, INC.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

MOVE, INC.

                  Plaintiff,

vs.

CITIGROUP GLOBAL MARKETS,
INC.

                  Defendant.

CASE NO.: **CV 14 - 04418 JFW (Ex)**

Assigned to:

**COMPLAINT FOR VACATUR OF
ARBITRATION AWARD**

Plaintiff MOVE, INC. alleges:

## PARTIES, JURISDICTION AND VENUE

    1.    Plaintiff Move, Inc. ("Move) is a corporation duly organized under the laws of the state of Delaware with a principal place of business in Westlake Village, California. Move provides information and decision support tools for consumers seeking home and real estate-related information on the Internet (www.move.com.)

    2.    Plaintiff is informed and believes, and on that basis alleges, that defendant Citigroup Global Markets, Inc. ("Citigroup") is a corporation organized under the laws of the state of New York with its principal place of business in New York. Citigroup is a financial services company that, among other things, acts as an

{00190968 } 1
COMPLAINT

investment advisor and fiduciary and provides investment services to corporate clients, including Move.

3.     This Court has jurisdiction over this action pursuant to 15 U.S.C. § 78; and/or 28 U.S.C. § 1331.

4.     Venue is proper in this judicial district pursuant to 9 U.S.C. §§ 9, 10, 11; 28 U.S.C. § 1391(b)(1); and/or 28 U.S.C. § 1391(b)(2).

**Citigroup's Deceptive Mismanagement of Move's Account**

5.     In 2002, Move (formerly known as Homestore.com) opened an account with Citigroup that grew to hold $165 million in cash.  Move advised and instructed Citigroup that Move's investment objective in opening that account was the preservation of capital and liquidity and that Move's risk tolerance was conservative. To achieve those objectives, Move authorized Citigroup to purchase or make only "top tier investments."

6.     Citigroup represented to Move that it understood Move's objectives and would manage Move's investments in compliance with those objectives. Nonetheless, Citigroup began purchasing and maintaining in Move's account Auction Rate Securities ("ARS") which are municipal and corporate bonds with interest rates that are periodically re-set through auctions.  If there are insufficient bids, a "failed auction" results and the ARS holder must continue to hold, rather than sell, the ARS until the next auction date, and potentially for an indefinite period, because there is no established secondary market for ARS.

7.     Citigroup earned fees from underwriting ARS that were higher than those it earned from other short-term investments, such as Treasury Bills.

8.     In 2002, the Securities and Exchange Commission ("SEC") opened an investigation related to manipulation and conflicts of interest in the ARS market which ultimately resulted in a settlement whereby Citigroup and other broker-dealers agreed to pay a $13 million penalty.

9.     In 2005, the liquidity of ARS declined and the demand for ARS sharply decreased.  At this time, Citigroup began marketing ARS aggressively to its large corporate customers in an effort to expand the customer base for ARS.

10.     In August 2007, a number of ARS auctions failed and the market for ARS began to deteriorate.  Citigroup was, and had a duty to be, aware of this deterioration of the ARS market.

11.     Nonetheless, Citigroup purchased and maintained ARS in Move's account; did not switch Move's investments into more liquid or conservative securities; and did not advise Move of the risks of maintaining an ARS portfolio.

12.     By early December 2007, Citigroup had invested $131 million of Move's money in ARS, representing 75% of Move's corporate cash.  At that time, Move questioned Citigroup concerning the soundness and liquidity of the ARS investments that Citigroup was maintaining in Move's account and expressed its desire to move its portfolio into Treasury Bills.  In response, Citigroup advised and represented to Move that the ARS investments were as liquid and secure as Treasury Bills; had a higher yield; and presented no risks.  Citigroup further advised Move not to liquidate the $131 million invested in ARS

13.     These representations were false and were known to be false by Citigroup, who knew beginning at least as early as August 2007 that there were significant increases in the risks associated with ARS, including failed auctions.

14.     As a consequence of and in reliance on Citigroup's false representations, Move did not invest in Treasury Bills but instead continued to rely on Citigroup to protect the liquidity of the investments in its account and to invest in accordance with Move's expressed investment objectives.

15.     Citigroup further failed to disclose to Move that the liquidity of ARS depended on Citigroup's participation in the auctions.

16.     In February 2008, Citigroup stopped supporting ARS auctions.  This caused widespread auction failures and left Move, among others, holding illiquid

securities in the form of ARS which failed to sell at auction.

17. On February 1, 2008, the auction for an ARS held in Move's account failed for the first time.

18. By February 25, 2008, all the ARS held in Move's account had failed to sell at auction.

19. Because there is no other established market for ARS, an ARS becomes illiquid when a re-set auction for that ARS fails.

20. Since February 2008, the ARS purchased and maintained by Citigroup for Move have been illiquid.

21. Thereafter, the Securities and Exchange Commission and several state regulators opened investigations into Citigroup's marketing of ARS. On August 7, 2008, Citigroup, the SEC and the New York Attorney general announced a settlement of the investigation by the SEC and the New York Attorney General's office at a reported cost of over $7 billion.

22. Citigroup also agreed to pay a $50 million civil penalty to the State of New York and a separate $50 million penalty to the North American Securities Administrators Association.

## The FINRA Arbitration

23. The "Client Agreement" between Citigroup and Move provided for arbitration of any disputes relating to Move's account before "any self-regulatory organization or exchange of which" Citigroup was a member. A true and correct copy of the "Client Agreement" is attached to this complaint as Exhibit "A" and incorporated herein by this reference.

24. Citigroup is a member of the Financial Industry Regulatory Authority ("FINRA"), a self-regulatory organization that bills itself as the largest independent securities regulator in the United States. FINRA operates the largest arbitration forum in the United States for the resolution of disputes between customers and member firms, and virtually all agreements between investors and their stockbrokers

include clauses requiring disputes between those parties to be resolved through FINRA arbitration.  Accordingly, the integrity of FINRA's arbitral process and confidence in that integrity are of paramount importance.

25.     On September 16, 2008, Move commenced an arbitration of its dispute with Citigroup before FINRA by submitting to FINRA its Statement of Claim; Uniform Submission Agreement; Claim Information Sheet; and a filing fee.

26.     Move's claims against Citigroup included causes of action for (1) breach of fiduciary duty; (2) breach of contract and breach of the contractual duty of good faith and fair dealing; (3) purchase of unsuitable investments in violation of SEC Rule 10b5; (4) misrepresentations and misleading statements in violation of SEC Rule 10b5; (5) violation of SEC Rule 15c1-2; (6) violation of the Investment Advisers Act, 15 U.S.C. §§ 801b-1 et seq; (7) negligent misrepresentation; and (8) negligent supervision.  Move sought an order rescinding Move's investment agreement with Citigroup and requiring Citigroup to return the funds that Move had entrusted to Citigroup, compensatory and punitive damages, interest, and attorneys' fees and costs.

27.     By its Uniform Submission Agreement, Move agreed that "the arbitration will be conducted in accordance with the Constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization." A true and correct copy of the Uniform Submission Agreement is attached to this complaint as Exhibit "B" and incorporated herein by this reference.

28.     Under FINRA's rules, a FINRA arbitrator is required to review the Temporary and Permanent Arbitrator Disqualification Criteria, the Arbitrator Disclosure Checklist, and his Arbitrator Disclosure Report and to execute an Oath of Arbitrator affirming that, based on the criteria for disqualification, he is not temporarily or permanently disqualified from being a FINRA arbitrator; and that his Arbitrator Disclosure Report is accurate, current and up to date.

29.     FINRA maintains a list of criteria for permanent disqualification of

arbitrators.  One of those criteria is "[m]isstatement or failure to disclose material information."

30.     Under FINRA Rules 12401 and 12403, Move was entitled to a panel composed of at least three qualified arbitrators and to have those arbitrators answer truthfully the questions posed to them in the required Disclosure Checklist.  Those complete and honest answers are essential to ensure the integrity of the arbitral process.

31.     Prior to the commencement of the arbitration of Move's claim against Citigroup, FINRA was required to and did provide Move with a list of proposed arbitrators  and their background information pursuant to FINRA Rule 12403(b)(1).  One of the arbitrators FINRA  proposed to act as public chairperson of the panel was identified as James H. Frank (referred to hereafter as "FINRA's Mr. Frank.")

32.     Attached hereto as Exhibit "C" is a true and correct copy of the "Arbitrator Disclosure Report" provided to Move by FINRA, purporting to disclose the background of FINRA's Mr. Frank.  Among other things, Exhibit "C" stated that FINRA"s Mr. Frank "is an attorney and has reported experience litigating cases involving injunctive relief"; that he received a JD degree in 1975 from Southwestern University; received an MBA from the US Airforce Institute of Technology in 1969; and was licensed to practice law in California, in Florida (inactive), and in New York (inactive.)

33.     Because the complex dispute between Move and Citigroup required sophisticated legal expertise and experience to understand and adjudicate, it was vitally important to Move that the public chairperson be an experienced lawyer.  Pursuant to FINRA Rule 12403(c)(2), Move was entitled to strike from the public chairperson's list up to four proposed candidates and to rank the remaining candidates in order of preference.  Move would not have accepted, and would have moved to strike (and did strike), candidates proposed by FINRA to act as public chairperson who were not lawyers.  Move ranked FINRA's  Mr. Frank as its first

choice for public chairperson based on FINRA's representation that he was a licensed attorney.

34.     FINRA's Mr. Frank was appointed the public chairperson of the FINRA arbitration of Move's claim against Citigroup and the arbitration proceeded. At the inception of the arbitration on October 5, 2009, FINRA's Mr. Frank identified himself on the record as a "retired or self-unemployed attorney" and stated that he had "no additional disclosures" after "reviewing my arbitrator disclosure list."

35.     The arbitration took place in Los Angeles, California between October 5 and October 23, 2009.  Prior to and throughout the arbitration, FINRA's Mr. Frank acted as the public chairperson of the panel and made all of the evidentiary rulings in the course of the arbitration, including granting Citigroup's motion in limine to exclude references to regulatory settlements by Citigroup in ARS cases.

36.     On December 8, 20009, FINRA served the arbitration panel's award, bearing the signature of "James H. Frank, Public Arbitrator, Presiding Chairperson" dated December 1, 2009, denying Move's claims in  their entirety and assessing $13,000.00 in hearing session fees against each party.

37.     On March 26, 2014, Move learned for the first time that FINRA's Mr. Frank had falsified his credentials; was not educated or licensed as a lawyer; and that FINRA, when alerted to these facts, had removed him from its roster of arbitrators.

38.     Since March 26, 2014, Move has learned that the full name of FINRA's Mr. Frank  is "James Hamilton Hardy Frank" (not "James H. Frank") and that he was impersonating details, including the education and license, of a retired California attorney named "James Hamilton Frank" (the "real attorney Frank"). Move has verified that FINRA's Mr. Frank has never been a member of the California, Florida or New York bars; that Southwestern Law School has no records of a student named James Hardy Frank (although the real attorney Frank did receive a JD from Southwestern Law School in 1975); and that FINRA's Mr. Frank did not receive an MBA from the US Airforce Institute of Technology.

39.     Prior to March 26, 2014, Move neither knew nor had any reason to know that FINRA's Mr. Frank had misrepresented his credentials or qualifications to arbitrate its dispute.  Neither did Move have any reason to doubt, but instead relied on, FINRA's representations as to the qualifications of FINRA's Mr. Frank and on the authority and integrity of FINRA as an arbitral forum.  The misrepresentations of FINRA's Mr. Frank as to his qualifications, his and FINRA's failures to disclose those misrepresentations, and the similarity between the (incompletely disclosed) name of FINRA's Mr. Frank and that of the attorney he was impersonating, constituted extraordinary circumstances that a reasonable person exercising due diligence would not have discovered and that prevented Move from discovering the misconduct of FINRA's Mr. Frank or from seeking to vacate the award.

40.     By letter dated April 24, 2014, FINRA confirmed to Move that in August 2013, FINRA learned "that some of the credentials claimed by Mr. Frank were in fact those of another individual also named James H. Frank" and "[u]pon learning of the apparent discrepancy, FINRA immediately removed Mr. Frank from all cases, and from the FINRA arbitrator pool."  A true and correct copy of that letter is attached to this complaint as Exhibit "D"."

41.     By failing to provide Move with three qualified arbitrators, FINRA failed to provide what Move agreed to, and was entitled to receive, under the Client Agreement and Uniform Submission Agreement.

42.     Move's rights were prejudiced by FINRA's failure to provide three qualified arbitrators and by the misrepresentations and misconduct of FINRA's Mr. Frank.

43.     As a consequence, the arbitrators exceeded their powers and/or so imperfectly executed their powers that a mutual, final and definite award was not made.

44.     Accordingly, vacatur of the FINRA arbitration award is proper under Sections 10(a)(3) and (4) of the Federal Arbitration Act.

WHEREFORE, plaintiff prays for judgment against defendant as follows:

1.      For vacation of the arbitration award and remand for a new arbitration hearing before new arbitrators;

2.      For the costs of the arbitration proceeding and this action;

3.      For reasonable attorneys' fees, as provided by law; and

4.      For such other and further relief as the Court deems just and proper.

HENNELLY & GROSSFELD LLP

DATED:  June 9, 2014          By: _____
                                  MICHAEL G. KING
                                  SUSAN J. WILLIAMS
                                  Attorneys for Plaintiff
                                  MOVE, INC.

{00190968 } 9

COMPLAINT

# EXHIBIT A

| From: | Leblanc, Perry J [PVTC] [perry.j.leblanc@smithbarney.com] |
|---|---|
| Sent: | Monday, August 02, 2004 10:04 AM |
| To: | Belote, Lew |
| Subject: | FW: HomeStore -- New account number |

| Importance: | High |
|---|---|
| Attachments: | Client Agreement.pdf; Corporate Resolution - Corporate.pdf |



Client        Corporate
reement.pdf (169 Resolution - Corpora.
                                    Good morning Lew.

Please find below the new account number & necessary documents.  Please contact us if we
may help further in any regard.

Thank you & good week.

> ----------
> From:        Jensen, Rita G [PVTC]
> Sent:        Monday, August 02, 2004 9:58 AM
> To:    Leblanc, Perry J [PVTC]
> Subject:       Homestore -- New account number
>
> Perry--The new account number for Homestore is 373-48143-16-651.
Attached
> are the documents that need to be signed by Lew Belote.  Thanks, Rita
>
> <<Client Agreement>>  <<Corporate Resolution - Corporate>>
>


------------------------------------------------------------
Reminder:  E-mail sent through the Internet is not secure.
Do not use e-mail to send us confidential information
such as credit card numbers, changes of address, PIN
numbers, passwords, or other important information.
Do not e-mail orders to buy or sell securities, transfer
funds, or send time sensitive instructions. We will not
accept such orders or instructions.  This e-mail is not
an official trade confirmation for transactions executed
for your account.  Your e-mail message is not private in
that it is subject to review by the Firm, its officers,
agents and employees.
------------------------------------------------------------

1

**CX 6**          Confidential
MOVE007319

EXHIBIT A                    Page 1 of 7

# Account Application, Client Agreement and Substitute Form W-9 Request for Taxpayer Identification Number

**SMITH BARNEY** citigroup

| Account Number | | | | | |
|---|---|---|---|---|---|
| Branch | Account | | I | IC | FC |

**Account Ownership/List all account owners:**

**Account Address:**

| Maling Address for this account(s) | Street Address/P.O. Box | | |
|---|---|---|---|
| | | | Apt. |
| | City | State | ZIP |
| Permanent/ Legal Address for this account(s) (if different) | Street Address | | |
| | | | Apt. |
| | City | State | ZIP |

U.S. Federal law requires us to obtain, verify and record information that identifies each person or entity that opens an account. What this means for you is that when you open an account, we will ask for your name, a street address, date of birth, and an identification number, such as a Social Security No. or other identification number, that Federal law requires us to obtain. We may also ask to see a driver's license, corporate formation document (for corporate entities), or other identifying documents that will allow us to identify you or the corporate entity seeking to open an account. We appreciate your cooperation.

| Date of Birth of Account Owner named first above: | Month | Day | Year | Citizenship: ☐ U.S. | ☐ U.S. Permanent Resident Alien Country of citizenship is: |
|---|---|---|---|---|---|

**This account is for (check appropriate box):** ☐ Individual/Sole Proprietor  ☐ Corporation  ☐ Partnership  Specify Other:

| Enter the Social Security Number of the Account Owner named first above OR the Employer Identification Number (if not an individual): | Social Security No. | OR | Employer Identification No. |
|---|---|---|---|

| Daytime | Evening | Fax No. | E-Mail Address |
|---|---|---|---|

**Alternate Mail Instructions:** Complete this section if you desire another individual to receive mail on your behalf. The individual you designate MUST qualify as a "special custodian," which is defined as someone who: is not authorized to withdraw funds or securities from your account, AND; is not authorized to place orders or move assets for you, AND; is not affiliated with, a broker/dealer or registered investment advisor.

Please direct all communications, including trade confirmations and monthly statements, for my account indicated above, to the special custodian designated below. This instruction will remain in effect until written notice to the contrary is received by you at the branch office servicing my account. (See Paragraph 12 Page 4)

| Name | Street Address |
|---|---|

| City | State | ZIP |
|---|---|---|

| **Borrowing Privilege** | Portfolio CreditLine® allows you to borrow against the value of eligible securities in your account for almost any investment, personal or business purpose. Eligible accounts will have Portfolio CreditLine borrowing privileges unless you decline below. See accompanying literature for an explanation of Portfolio CreditLine borrowing. ☐ I/We do not want Portfolio CreditLine borrowing privileges in my/our account. Please note that you may not obtain an FMA Card (below) if you check this box. |
|---|---|
| **Smith Barney Access®** | With Smith Barney Access® you can view account information, stock quotes, research and other information on the Internet. Enrollment is easy at www.smithbarney.com Speak to your Financial Consultant regarding our free SB Access Internet Bill Pay service.  Mother's Maiden Name is required to enroll online: _____ |
| **FMA Checking** | Checkwriting privileges provide you with convenient access to your money. All check information is reported on your monthly statement, including payee name and date written. Expense codes give you the option to categorize payments for tracking on your monthly and year-end statements. Please select your printing preference: ☐ Name and address   ☐ Name only, no address Please select your check style:  ☐ Wallet size   ☐ Executive (additional charge)   ☐ Corporate (additional charge) Multiple owner accounts—please tell us if one or two signatures are required to authorize checks: ☐ One signature required ☐ Two signatures required |
| **FMA Card** | The FMA Card is a Gold MasterCard® debit card that gives you easy access to cash at over 600,000 ATM machines and purchasing power at over 19 million locations. Enroll in our optional Travel & Rewards program and earn points towards exciting merchandise, restaurant and air travel rewards with every qualifying purchase. No annual card fee applies. |

| How should the account owner's (primary cardmember's) information appear? | Account Owner's Name (exactly as you wish it to appear on card) | | Home Phone Number |
|---|---|---|---|
| | Social Security Number | Mother's Maiden Name | |
| How should the account co-owner's information appear? | Account Co-owner's Name (exactly as you wish it to appear on card) | | Home Phone Number |
| | Social Security Number | Mother's Maiden Name | |

**Travel & Rewards** ☐ Yes, sign my FMA Card(s) up for the Travel & Rewards program so I can begin earning points with my first eligible purchases. A $50 annual membership fee may apply.

| **Additional FMA Privileges** | The following services are also available when you establish your FMA account. Speak with your Financial Consultant for more details. |
|---|---|

☐ **Direct Deposit.** Your employer, pension plan or Social Security can send payments directly to your account. Contact the payer directly to enroll.

**Idle cash will be swept daily into your choice of:**
☐ Bank Deposit Program—FDIC-insured deposits in affiliated Citigroup banks (Note: not available for managed accounts or business accounts).
☐ Tax-free money market fund selection.
☐ Insured savings deposits through the IDA feature.

☐ **Dividend Reinvestment.** Reinvest dividends into additional shares without transaction fees. Speak to your Financial Consultant to select which dividends to reinvest.

3026  (10/2003) page 1 of 4

Smith Barney is a division and service mark of Citigroup Global Markets Inc.

* 3 0 2 6 *

Confidential
MOVE007320

**EXHIBIT A**                    **Page 2 of 7**

| Account Number Branch | Account | T | C | FC |
|---|---|---|---|---|
| | | | | |

## FMA Automatic Funds Transfers

Transfer money by phone between your FMA and bank account. You may also transfer to another Smith Barney account that has been linked to your FMA account for statement reporting purposes.

*Attach a voided check or a letter from your bank confirming the account number, title, account type (checking or savings) and the bank routing number (not required for transfers to Smith Barney accounts). Your bank account must have the name of at least one FMA account owner in the title. Speak to your Financial Consultant for trust and estate ownership requirements.*

| Financial Institution | ☐ Check if Credit Union | Account Number | Type of Account: ☐ Checking ☐ Savings |
|---|---|---|---|

Select your Telephone Authorization Code: (numbers only): ☐☐☐ | SB Access AFT: *Contact your Financial Consultant to obtain Electronic Client ID or to enable an existing one.*

**OPTIONAL - Complete only if you wish to establish monthly or biweekly recurring transfers.**
☐ Check here for recurring transfers INTO your FMA account FROM your bank account.
☐ Check here for recurring transfers FROM your FMA account INTO your bank account.

Amount of Transfer $_____ or Monthly, on the _____ day of each month *(specify the 1st through 28th)* or
Biweekly on ☐ Mon ☐ Tue ☐ Wed ☐ Thu ☐ Fri

**Complete this section only if your bank account title includes someone who is not a co-owner of your FMA.**
I authorize Smith Barney ("SB") to initiate transfers and make adjustments for entries made in error to or from my account indicated above, in accordance with the terms of the FMA Agreement, which I have read and agree to. This authorization is to remain in full force and effect until SB has received notification from me of its termination.

| Account title | Signature of non-FMA owner(s) | Date |
|---|---|---|

## Quicken® or Microsoft® Money

With a Smith Barney Financial Management Account, you may track your account transactions and activity with Quicken®, QuickBooks® or Microsoft® Money software. Fees may apply. Please ask your Financial Consultant for an application.

## FMA Plus℠

☐ Establish my account as an FMA PLUS. I will benefit from: fee waivers on up to 100 ATM withdrawals per year with my FMA Card, no monthly fee for downloading data to Quicken or Microsoft Money, a complimentary IRA linked to my account, and premier statement reporting. *Speak with your Financial Consultant for details on statement reporting and IRA services. Not available for Business FMA accounts.*

## Name Disclosure

The issuers of securities we hold for you in street name may request your name, address and securities position. This information will not be released if you check this box: ☐

Bank issued certificates of deposit purchased through Smith Barney, the Smith Barney Bank Deposit Program℠ and the Smith Barney Insured Deposit Account sweep feature are insured by the FDIC (see disclosure documents for details). All other investment or insurance products sold through Smith Barney:
- are not insured by the FDIC;
- are not a deposit or other obligation of a depository institution and are not guaranteed by a depository institution;
- are subject to investment risks, including the possible loss of the principal amount invested.

In consideration of Citigroup Global Markets Inc. ("you") accepting an account for me/us, I/we ("I") acknowledge that I have read, understand and agree to the terms of the attached Client Agreement in sections 1 through 11. If this is a multiple party account, I/we further acknowledge that I/we have read, understand and agree to the terms of the attached Client Agreement contained in sections 12 through 14. If I have requested Smith Barney Access, I have read, understand, and agree to the terms of the Smith Barney Access Agreement. If I have requested any of the services referenced in the FMA sections above, I agree to the terms of the FMA Agreement that has been provided to me and understand that both an account minimum balance and annual fee apply. I authorize you to establish checking privileges, Online Services and the Automatic Funds Transfer service, and to have the FMA Card(s) issued as instructed on this Account Application, and I affirm that I have the authority to open this account. I authorize you and the FMA Card Issuer to have FMA Card(s) issued as indicated. I understand that this account is governed by the FMA Agreement, the Client Agreement, the Online Services Agreement, my agreement with the FMA Card issuer, the Bank Deposit Program Disclosure Document, the IDA Disclosure Document, and/or other agreements I may have with you or other providers of services related to the FMA account. I have read all these documents and agree to their terms.

If this account is established with Portfolio CreditLine privileges, I further acknowledge that I have read, understand and agree to the terms of the attached Client Agreement contained in sections 15 through 17 and that my/our securities may be loaned to you or loaned out to others.

**Tax Certification: Under penalties of perjury I certify that:**
1.) the number I have provided above is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and
2.) I am not subject to backup withholding because: a.) I am exempt from backup withholding, or b.) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest and dividends, or c.) the IRS has notified me that I am no longer subject to backup withholding.
3.) I am a U.S. person (including a U.S. resident alien)
**Certification Instructions:** You must cross out item (2) above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

*Smith Barney requires your consent to the applicable provisions of this Agreement in order to open and maintain your account.*

**All account owners must sign.**

*If FMA Checking is requested, please sign as you will normally sign your checks.*

Account Owner's Signature ▶

Co-owner's Signature ▶

I acknowledge that I have received the Client Agreement which contains a pre-dispute arbitration clause on page 3, section 6.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

Date _____

Date _____

3026 (10/2003) page 2 of 4

Smith Barney is a division and service mark of Citigroup Global Markets Inc.

Confidential
MOVE007321

EXHIBIT A                    Page 3 of 7

## CLIENT AGREEMENT

In consideration of your opening one or more accounts for me ("we", "us" and "our" are each substituted for "I", "me" and "my", respectively, in the case of multiple account holders, corporations and other entities), and your agreeing to act as broker/dealer for me for the extension of credit and in the purchase or sale of securities, commodities, options and other property, it is agreed in respect to any and all accounts, whether upon margin or otherwise, which I now have or may at any future time have with Citigroup Global Markets Inc. or its direct or indirect subsidiaries and affiliates or their successors or assigns (hereinafter referred to as 'you', 'your', "SB" or "Smith Barney"), that:

1. All transactions entered into under this Agreement shall be subject to any applicable constitution, rules, regulations, customs and usages of the exchange or market and its clearinghouse, if any, where such transactions are executed by SB or its agents and to all applicable laws, rules and regulations of governmental authorities and self-regulatory agencies. Such reference to the "constitution, rules, regulations, customs and usages of the exchange" shall in no way be construed to create a cause of action arising from any violation of such constitution, rules, regulations, customs and usages. If any provision is enacted that would be inconsistent with any of the provisions of this Agreement, the provision so affected shall be deemed modified or superseded by the enactment, but the remaining provisions of this Agreement shall remain in effect. Except as herein provided, no provision of this Agreement may be waived, altered, modified or amended unless the same is in writing and signed by an authorized official of SB.

2. I agree that all property which I own or in which I have an ownership interest, whether owned individually, jointly or in the name of another person or entity, which at any time may be in your possession or control for any purpose, including safekeeping, shall be subject to a continuing security interest, lien and right of set-off for the discharge and satisfaction of any debts or obligations however arising that I may owe to SB at any time and for any reason. SB may at its discretion hold such property until my debts or obligations to SB are fully satisfied or SB may apply such property and the proceeds of the liquidation of such property toward the satisfaction of my debts and obligations and I will remain liable to SB for any deficiency. In enforcing your security interest, you shall have the discretion to determine which property is to be sold and the order in which it is to be sold and shall have all the rights and remedies available to a secured party under the New York Uniform Commercial Code. Without your prior written consent, I will not cause or allow any of the collateral held in my account(s), whether now owned or hereafter acquired, to be or become subject to any liens, security interests, mortgages or encumbrances of any nature other than your security interest.

Without limiting the generality of the foregoing, I hereby authorize SB to automatically liquidate any money market fund shares or withdraw any savings deposit balances available in my account(s) from time to time to cover any of my indebtedness or obligations to SB including non-trade related debts. You are further authorized to liquidate any other property held in my account(s) to satisfy any such indebtedness or obligations whenever in your discretion you consider it necessary for your protection.

You are hereby authorized without further direction from me to automatically deposit or 'sweep' all the free credit balances in my account into one or more FDIC insured depository institutions ("Program Banks") affiliated with you as more particularly set forth in the disclosure document which I represent that I have read and by which I agree to be bound. I understand that you may amend the list of Program Banks and that I may eliminate any Program Bank from the list at any time. If my free credit balances that are swept into the Program Banks reach the maximum amount that I have authorized you on my behalf to deposit or that may be so deposited under the Bank Deposit Program ("Program"), you are authorized to sweep, without further direction from me, my excess eligible free credit balances into the SB Money Fund portfolio that I have chosen.

I acknowledge (i) that I am responsible to monitor the total amount of deposits I have at each Program Bank in order to determine the extent of Federal Deposit Insurance Corporation insurance coverage available to me, and (ii) that SB is not responsible for any insured or uninsured portion of my deposits at any of the Program Banks.

I understand that I may instruct you not to sweep the free credit balances in any of my accounts into a Program Bank account but instead to sweep such free credit balances into a tax exempt money market fund. If I so instruct you, you are authorized, without further direction from me, to invest any eligible free credit balances in any of my accounts in the tax exempt money market fund you make available and that I have chosen.

If I have elected the Insured Deposit Account ("IDA") feature as my sweep, you are authorized without further direction from me to invest eligible free credit balances in my accounts in savings deposits at the depository institutions in the order set forth in the IDA feature (to me from time to time. I understand that you may amend the list of depository institutions and that I may eliminate depository institutions from the list at any time. If my funds invested through the IDA feature reach the maximum amount that I have authorized you to so invest or that may be so invested, you are authorized to invest excess eligible free credit balances in the money market fund I have chosen or you have chosen pursuant to my authorization. I have read the IDA Disclosure Document and agree to be bound by its terms and conditions.

'Property' as used anywhere in this Agreement shall include, but not be limited to, investment property, securities and commodities accounts, securities of all kinds, money, savings deposits, certificates of deposit, bankers' acceptances, commercial paper, options, commodities, and contracts for the future delivery of commodities or relating to commodities or securities, and the distributions, proceeds, products and accessions of any of the above. All property held in a securities account shall be treated as a financial asset under Article 8 of the New York Uniform Commercial Code.

3026 (10/2003) page 3 of 4

3. In case of the sale of any security, commodity, or other property at my direction and the inability of SB to deliver the same to the purchaser by reason of my failure to supply them to SB, I authorize SB to borrow any security, commodity, or other property necessary to make delivery thereof, and I hereby agree to be responsible for any loss which SB may sustain thereby and any premiums, interest or other costs which SB may be required to pay as a result of such borrowing, and for any loss or cost which SB may sustain by reason of its inability to borrow the security, commodity, or other property sold.

I agree that if I utilize your services to receive or issue funds by wire (wire transfers), I am responsible for the issuance of accurate and complete instructions in relation to said wire transfers and I will hold you harmless from all liabilities if I fail to fulfill this responsibility. I further agree that should I incur a loss in connection with a wire transfer as a result of negligence or other activities on your part, your liability will be limited to the actual amount of the misdirected or misapplied funds and no other damages of any other nature including consequential damages will be recoverable.

You may charge my account(s) with such usual and customary charges as you may determine to cover your services and facilities, including, but not limited to, custody, transaction and termination fees. In addition, you may charge an inactivity fee which once charged, shall be nonrefundable. I will promptly pay SB any deficiency that might arise in my account(s). I understand and agree that a finance charge may be charged on any debit balance in any cash account I have with SB in accordance with the terms described in the SB literature previously provided to me and any subsequent modifications thereto which will be provided to me. You may transfer excess funds between any of my accounts (including commodity accounts) for any reason not in conflict with the Commodity Exchange Act or any other applicable law. If any transactions are effected on an exchange in which a foreign currency is used, any profit or loss as a result of a fluctuation in the exchange rate will be charged or credited to my account(s).

4. Communications may be sent to the mailing address on file with you, or at such other address as I may hereafter give in writing, and all communications so sent, whether by mail, telegraph, messenger or otherwise, shall be deemed given to me personally, whether actually received or not. I acknowledge that the rules of the Securities and Exchange Commission require that certain communications be sent to me rather than an agent acting on my behalf. I warrant that the address currently on file with you is an address where I personally receive communications unless it is the address of a qualified custodian as defined by the Securities and Exchange Commission. Transactions entered into for my account(s) shall be confirmed in writing to the extent required by applicable law or regulation. In addition, SB shall provide me with periodic statements reflecting activity in such account(s). I agree that transactions reflected on such confirmations and statements shall be conclusively deemed accurate as stated unless I notify SB in writing within three (3) days and ten (10) days of receipt, respectively, that the information contained in such confirmation or statement is inaccurate. Such notice must be sent by me to SB by telegram or letter directed to the attention of the Branch Office Manager of the office servicing the account. Failure to so notify SB shall also preclude me from asserting at any later date that such transaction was unauthorized.

I authorize you at your discretion to obtain reports and to provide information to others concerning my credit standing and my business conduct. You may ask credit reporting agencies for consumer reports of my credit history. Upon my request you will inform me whether you have obtained any such consumer reports and if you have, you will inform me of the name and address of the consumer reporting agency that furnished the reports to you.

5. I hereby represent that I am of the age of majority. Unless I advise you to the contrary, in writing, and provide you with a letter of approval from my employer, where required, I represent that I am not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock, or of a member of any exchange, or of a member firm or member corporation registered on any exchange, or of any corporation, firm or individual engaged in the business of dealing, either as a broker or as principal, in securities, bills of exchange, acceptances or other forms of commercial paper. I further represent that no one except those signing this agreement has an interest in my account.

If my account has been introduced to you and is carried by you only as a clearing broker, I agree that you are not responsible for the conduct of the introducing broker and your only responsibilities in me relate to the execution, clearing and bookkeeping of transactions in my accounts.

6. Arbitration
• Arbitration is final and binding on the parties.
• The parties are waiving their right to seek remedies in court, including the right to jury trial.
• Pre-arbitration discovery is generally more limited than and different from court proceedings.
• The arbitrators' award is not required to include factual findings or legal reasoning, and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.
• The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

I agree that all claims or controversies, whether such claims or controversies arose prior, on or subsequent to the date hereof, between me and SB and/or any of its present or former officers, directors, or employees concerning or arising from (i) any account maintained by me with SB individually or jointly with others in any capacity; (ii) any transaction involving SB or any predecessor firms by merger, acquisition or other business combination and me,

Smith Barney is a division and service mark of Citigroup Global Markets Inc.

Confidential
MOVE007322

EXHIBIT A                    Page 4 of 7

whether or not such transaction occurred in such account or accounts; or (iii) the construction, performance or breach of this or any other agreement between us, any duty arising from the business of SB or otherwise, shall be determined by arbitration before, and only before, any self-regulatory organization or exchange of which SB is a member. I may elect which of those arbitration forums shall hear the matter by sending a registered letter or telegram addressed to Smith Barney at 77 Water Street, New York, N.Y. 10005, Attn: Law Department. If I fail to make such election before the expiration of five (5) days after receipt of a written request from SB to make such election, SB shall have the right to choose the forum.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; (ii) the class is decertified; or (iii) the customer is excluded from the class by the court.

Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

7. The provisions of this Agreement shall be continuous, shall cover individually and collectively all accounts which I may open or reopen with SB, and shall inure to the benefit of SB's present organization, and any successor organization or assigns; and shall be binding upon my heirs, executors, administrators, assigns or successors in interest. Should any item or provision of this Agreement be deemed or held to be invalid or unenforceable, the remaining terms and provisions shall continue in full force and effect. Except for statutes of limitation applicable to claims, this Agreement and all the terms herein shall be governed and construed in accordance with the laws of the State of New York without giving effect to principles of conflict of laws. The statute of limitations applicable to any claim that which would be applied by the courts of the state in which I reside.

8. I understand that you may in your sole discretion prohibit or restrict trading of securities or substitution of securities in any of my accounts. You have the right to terminate any of my accounts (including multiple owner accounts) at any time by notice to me. The provisions of this agreement shall survive the termination of any account.

9. Your failure to insist at any time upon strict compliance with any term of this Agreement, or any delay or failure on your part to exercise any power or right given to you in this Agreement, or a continued course of such conduct on your part shall at no time operate as a waiver of such power or right, nor shall any single or partial exercise preclude any other further exercise. All rights and remedies given to you in this Agreement are cumulative and not exclusive of any other rights or remedies which you otherwise have.

10. I understand that SB shall not be liable for loss caused directly or indirectly by government restrictions, exchange or market rulings, suspension of trading, war, terrorist acts, strikes or other conditions, commonly known as "acts of God," beyond SB's control.

11. From time to time you may at your discretion, make loans to me for a purpose other than purchasing, carrying or trading in securities ("Express Credit Loans"). Express Credit Loans will be made in a nonsecurities credit account ("Express Credit Account"). The minimum and maximum amount of any particular loan may be established by you in your discretion regardless of the amount of collateral delivered to you and you may change such minimum and maximum amounts from time to time.

I agree not to use the proceeds of any Express Credit Loan to purchase, carry or trade in securities. I also agree not to use Express Credit Loan proceeds directly or indirectly to repay other debt that I incur for the purpose of purchasing, carrying or trading in securities.

12. If I have designated another individual to receive my communications from you pursuant to the Alternate Mail Instruction on Page 1, I agree that the instruction is applicable to all communications including but not limited to proxies, prospectuses, confirmations and statements of account. In consideration of your accepting and acting upon that instruction, I agree that all such communications shall be deemed for all purposes to have been personally received by me on the date indicated in such communication. I further agree to indemnify and hold harmless you, your officers, directors and employees from any and all liabilities arising from your compliance with these instructions and I hereby specifically waive any claims arising from my election to not promptly review transactions posted to my account.

**Additional Terms for Multiple Party Accounts**

**Paragraphs 13 through 15 apply only to multiple party accounts.**

13. If this is a multiple party account, in consideration of you and your successors carrying a multiple party account on margin or otherwise for the undersigned, each of us agrees to be jointly and severally liable for said account and to pay on demand any debit balances or losses at any time due in this account. Any of us has full power and authority to make purchases and sales, including short sales, to withdraw monies and securities from, or to do anything else with reference to our account, either individually or in our joint names, and any of your successors are authorized and directed to act upon instructions received from any of us and to accept payment and securities from any of us for the credit of this account. Notwithstanding the ability of each of you to control the account individually, we understand and agree that you may, at your sole option, require written instructions signed by all account owners when payments or transfers are requested. Any and all notices, communications, or any demands for margin sent to any of us shall be binding upon all, and may be given by mail or other means of communication. We hereby designate this account to be a joint tenancy with rights of survivorship unless we instruct you to establish another form of multiple ownership by executing a tenancy in common agreement, community property agreement, partnership agreement or other applicable agreement evidencing the desired form of ownership.

14. Each of us agrees to hold SB harmless from and indemnify SB against any losses, causes of action, damages and expenses arising from or as the result of SB following the instructions of either or any of us. SB, in its sole discretion, may at any time suspend all activity in the multiple party account pending instructions from a court of competent jurisdiction or require that instructions pertaining to the multiple party account or the property therein be in writing signed by both or all of us. SB shall be entitled to recover from the account or from any of us prior to distribution of the funds or property therein such costs as it may incur, including reasonable attorney's fees, as the result of any dispute between or among us relating to or arising from the account.

15. Each of us agrees that, in the event of the death of either or any of us, the survivor or survivors shall immediately give you written notice thereof, and you may, before or after receiving such notice, take such actions, require such papers, inheritance or estate tax waivers, retain such portion of the account and restrict transactions in the account as you may deem advisable to protect you against any tax, liability, penalty or loss under any present or future laws or otherwise. The estate of either or any of us who shall have died shall be liable and each survivor shall continue liable, jointly and severally, to you for any and debit balance or loss in said account in any way resulting from the completion of transactions initiated prior to the receipt by you of the written notice of the death of the decedent, or incurred in the liquidation of the account or the adjustment of the interests of the respective parties.

If this account contains rights of survivorship, in the event of the death of either or any of us, all assets in the account shall pass to and be vested in the survivor or survivors on the same terms and conditions as previously held, without in any manner releasing the decedent's estate from the liabilities provided for herein. The estate of the decedent(s) and the survivors hereby jointly and severally agree to fully indemnify and hold harmless SB from all liability for any taxes which may be owed in connection therewith or any claims by third parties.

**Margin Agreement**

**Paragraphs 16 through 18 apply only to Margin Accounts**

16. You are hereby authorized, without notice to me, and without regard as to whether or not you have in your possession or under your control at the time thereof other property of the same kind and amount, to pledge, repledge, hypothecate or rehypothecate my property or any part thereof, either separately or together with other property of other clients, either for the amount due you from me or for a greater sum.

17. I agree to pay ON DEMAND any balance owing with respect to any of my accounts, including interest and commissions and any costs of collection (including attorneys' fees, if incurred by you). I understand that you may demand full payment of the balance due in my account plus any interest charges accrued thereon, at your sole option, at any time without cause and whether or not such demand is made for your protection. I understand that all loans made are not for any specific term or duration but are due and payable at your discretion upon a demand for payment made to me. I agree that all payments received for my account(s) including interest, dividends, premiums, principal or other payments may be applied by you to any balances due in my account(s). If I maintain both a cash and a margin account with you, you are authorized in your discretion to utilize the equity in either type of account in satisfaction of any maintenance margin requirement without the actual transference of funds or securities between such accounts.

Whenever you deem it necessary or appropriate for your protection, you are authorized, in your sole discretion, to sell, assign, transfer and deliver all or any part of my property which may be in your possession or control in any manner you deem appropriate, make any necessary purchases to cover short sales and/or any open commodity contract positions and/or to cancel any outstanding orders in order to close out the account. Without limiting the generality of the foregoing, such sale, purchase or cancellation may be made, in your sole discretion, on the exchange or other market where such business is then usually transacted, at public auction or at private sale without advertising the same. All of the above may be done without demand for margin or notice of purchase, sale or cancellation to me. No demand for margin, or notice given to me of intent to purchase or sell property or to cancel orders in my account, shall impose on you any obligation to make such demand or provide such notice to me. Any such notice or demand is hereby expressly waived, and no specific demand or notice shall invalidate this waiver. After deducting all costs and expenses of the purchase and/or sale and deliveries, including, but not limited to, commissions and transfer and stamp taxes, you shall apply the residue of the proceeds to the payment of any and all of my liabilities to you, and I shall remain liable for any deficiency. Upon any such sale, you may purchase the whole or any part thereof free from any right of redemption. In the event of my death or incompetency, the authority given by this Paragraph shall continue effective and shall be binding upon my personal representatives and heirs.

18. I will at all times maintain such margin for my account maintained by SB, as SB may require from time to time, and any debit balances arising in such account shall be charged interest in accordance with the terms described in the SB literature previously provided to me and any subsequent modifications thereto which will be provided to me. I am aware that interest charges, if not paid, will be added to the debit balance in my account for the next interest period. I am aware and agree that you may impose, for my account(s), margin requirements more stringent than those required by law or exchange regulations. I further understand and agree that such margin requirements may be changed and modified by you from time to time without prior notice to me. I further agree that any waiver by you or failure to promptly enforce, as to my account or that of others, such margin requirements shall not in any way prevent you from subsequently enforcing said margin requirements with regard to my account.

3026  (10/2003) page 4 of 4

Smith Barney is a division and service mark of Citigroup Global Markets Inc.

Confidential
MOVE007323

EXHIBIT A                                    Page 5 of 7

# Corporate Resolutions for Corporate Account



| Account Number | | | | |
|---|---|---|---|---|
| Branch | Account | T | IC | FC |

| Name of Corporation | State of Incorporation |
|---|---|

The Corporation certifies that the Secretary of the Corporation named above (the "Corporation"), whose name appears beneath the Secretary's Certification (below), has been duly elected to and now holds that office and that the signature appearing opposite his or her name is his or her true signature.

| Print Name of President/CEO | Signature of President/CEO | Dated |
|---|---|---|
| | X | |

| Note: If the Secretary is empowered to act by the following resolutions, the President/CEO of the Corporation must execute this supplemental certification. | I, being the President/CEO of the Corporation, do hereby certify that the Secretary, whose signature appears below, is empowered to act on behalf of the Corporation in accordance with the following resolutions. | Signature of President/CEO |
|---|---|---|
| | | X |

## CERTIFICATION

I hereby certify that I am the Secretary of the Corporation named above, a corporation duly organized and existing under the laws of the State of incorporation, that the Corporation is in good standing and qualified to do business in this state. I further certify that the following is a true, correct and complete copy of resolutions duly adopted at a meeting of the Board of Directors of the Corporation held on the date specified below, at which meeting a quorum was present and voting; that such resolutions are in accordance with the charter and by-laws of the Corporation, are in full force and effect and have not been amended, modified or rescinded.

IN WITNESS WHEREOF, I have hereunto affixed my hand (and the seal of the Corporation) this _____ day of _____, _____.

| Name of Secretary (Print) | Signature of Secretary | Date of Meeting of Board of Directors |
|---|---|---|
| | X | |

## RESOLVED:

**FIRST,** that the individuals named in the spaces below ("Authorized Person") be and each of them hereby is, authorized and empowered to the fullest extent possible, to act on behalf of the Corporation, to establish and maintain a cash account, margin account, Business Financial Management Account℠ ("BUSINESS FMA"), commodities account or other account deemed necessary, proper or appropriate (each, a "Securities Account") with Citigroup Global Markets Inc. ("CGMI") for the purpose of purchasing, investing in, or otherwise acquiring, selling (including short selling), possessing, transferring, exchanging, borrowing, pledging or otherwise disposing of and generally dealing in and with cash and any and all forms of securities, including, but not limited to shares, stocks, bonds, debentures, notes, scrip, participation certificates, rights to subscribe, options, warrants, commodities, commodity futures and/or options on futures, certificates of deposit, mortgages, evidences of indebtedness, commercial paper, and interests of any and every kind and nature whatsoever, secured and unsecured, whether represented by trust, participating and/or other certificates or otherwise.

| Print Name and Title, If Applicable | Signature |
|---|---|
| Print Name and Title, If Applicable | Signature |
| Print Name and Title, If Applicable | Signature |
| Print Name and Title, If Applicable | Signature |
| Print Name and Title, If Applicable | Signature |
| Print Name and Title, If Applicable | Signature |

FOR 2105-C (4/2003) Page 1 of 2

**SECOND,** that, on behalf of the Corporation, any Authorized Person shall have the fullest authority with respect to the Securities Account including, but not limited to, authority to

1) give written or oral instructions to CGMI with respect to any securities in, or transaction or service offered in connection with, the Securities Account,

2) deposit money, securities and other property of the Corporation in the Securities Account,

3) borrow money from CGMI and secure payment thereof with the property of the Corporation,

4) bind the Corporation to any contract, arrangement or transaction, which shall be entered into by any Authorized Person with or through CGMI,

5) make payments related to the Securities Account by checks and/or drafts drawn upon the funds of the Corporation,

6) deliver money or securities or accept delivery of money or securities,

7) endorse any securities in order to pass ownership thereof or for any other purpose,

8) direct the sale or exercise of any rights with respect to securities therein,

9) sign releases and powers of attorney and enter into contracts and agreements, including, but not limited to a CGMI Client Agreement, BUSINESS FMA Agreement, and documentation relating to any debit or credit card, the checkwriting privilege, online services, electronic fund transfers and other services which are or may be offered in connection with the Securities Account, as such documents may be modified from time to time, and any documentation permitted or contemplated by such agreements, products and services, and to affix the corporate seal to same, *Continued on page 2.*

Confidential
MOVE007324

10)   direct CGMI to surrender securities to the proper agent or party for the purpose of effecting any exchange or conversion, or otherwise,

11)   take any and all action in connection with the Securities Account deemed necessary or desirable by any Authorized Person.

**THIRD,** that any Authorized Person may appoint any person(s) ("Designated Person") to 1) conduct trading in the Securities Account, 2) endorse any securities, or to make, execute and deliver, under the corporate seal of the Corporation or otherwise, any instrument of assignment and/or transfer necessary or proper to pass title to such securities, 3) sign checks (in which event, the signature of the Designated Person shall promptly be provided on any applicable signature card upon request by CGMI), 4) use any associated debit or credit card or 5) provide instructions to effect electronic fund transfers.

**FOURTH,** that each Authorized Person is empowered and authorized to do all things each deems necessary or desirable to implement the foregoing resolutions.

**FIFTH,** that CGMI may deal with any and all of the persons directly or indirectly empowered by the foregoing resolutions as though they are dealing with the Corporation directly.

**SIXTH,** that the Secretary of the Corporation is hereby authorized and empowered to certify to CGMI, under the seal of the Corporation or otherwise:

(a)   a true, correct and complete copy of these resolutions;

(b)   specimen signatures of each Authorized Person and each Designated Person empowered by these resolutions, if so requested by CGMI;

(c)   a certificate (which, if required by CGMI, shall be supported by an opinion of the general counsel of the Corporation, or other counsel satisfactory to CGMI) that the Corporation is duly organized and in good standing, that the corporate charter authorizes the action or business described in these resolutions, and that no provision in the charter, by-laws or other governing document of the Corporation limits the power of the Board of Directors to pass these resolutions.

**SEVENTH,** that the fact that any person hereby empowered ceases to be an officer of the Corporation or becomes an officer under another title, shall not affect the powers hereby conferred. In the event of any change in the office or powers of persons hereby empowered, the Secretary shall certify such changes to CGMI in writing, addressed to the branch or other representative office through which the Securities Account is opened. Such notification, when received, shall terminate the powers theretofore authorized, and empower the persons thereby substituted.

**EIGHTH,** that CGMI may rely upon any certification furnished to CGMI in accordance with these resolutions and that the foregoing resolutions and the certificates furnished to CGMI are in full force and effect and irrevocable until receipt by CGMI of written notice of revocation or modification by the Corporation, addressed to the branch or other representative office through which the Securities Account is opened. The dispatch or receipt of any other form of notice shall not constitute a waiver of this provision.

| Account Number | | | | | |
|---|---|---|---|---|---|
| Branch | Account | | T | IC | FC |

FOR 2105-C (4/2003) Page 2 of 2

Confidential
MOVE007325

EXHIBIT A

Page 7 of 7

# EXHIBIT B

# CLAIM INFORMATION SHEET

## I.    PARTIES

CLAIMANT(S): (Provide this information even if you are represented by counsel.)

Move, Inc., f/n/a Homestore.com, Inc.

Name
30700 Russell Ranch Road

Address
Westlake Village, CA   91362-6399

| City | State | Zip Code |

1 (805) 557-2300          1 (805) 557-2680
Daytime Telephone                    Fax #                              Email Address

Residence during the time of the dispute (if different from above):

Name

Address

| City | State | Zip Code |

Claimant is a:
☐ Public customer    ☐ Broker-dealer    ☐ Person associated with a broker-dealer
BD #                              CRD #

**Claimant's Counsel/Representative (if applicable):** (Note: FINRA requires that persons representing Florida investors in arbitration proceedings conducted in or outside of the State of Florida affirm either that they are licensed to practice law and provide a bar identification number, or that they are not receiving compensation in connection with representing the party in the arbitration proceeding.)

William A. Isaacson, Esq.                        Kevin J. Barry, Esq.
Boies, Schiller & Flexner LLP                    Boies, Schiller & Flexner LLP
Name    DC BAR #414788                 Bar ID # (if applicable) CALIFORNIA BAR# 229748

5301 Wisconsin Avenue NW                      1999 Harrison Street, Suite 900
Address

Washington, DC 20015                           Oakland, CA  94612
City                              State                              Zip Code
1 (202) 237-2727; 1 (202) 237-6131        1 (510) 874-1000; 1 (510) 874-1460
Business Telephone                    Fax #        kbarry@bsfllp.comEmail Address
e-mail address wisaacson@bsfllp.com.

If needed, copy this page to list additional accounts.

13

EXHIBIT B                                        Page 1 of 2

NASD DISPUTE RESOLUTION
UNIFORM SUBMISSION AGREEMENT

Claimant(s)

**In the Matter of the Arbitration Between**

Name(s) of Claimant(s)
Move, Inc.

**and**

Name(s) of Respondent(s)
Citigroup Capital Markets Inc.
                Global

1. The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, cross claims and all related counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the Constitution, By-Laws, Rules, Regulations, and/or *Code of Arbitration Procedure* of the sponsoring organization.

2. The undersigned parties hereby state that they have read the procedures and rules of the sponsoring organization relating to arbitration.

3. The undersigned parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s). The undersigned parties further agree and understand that the arbitration will be conducted in accordance with the Constitution, By-Laws, Rules, Regulations, and/or *Code of Arbitration Procedure* of the sponsoring organization.

4. The undersigned parties further agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement and further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the undersigned parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

5. The parties hereto have signed and acknowledged the foregoing Submission Agreement.

Move, Inc. by:

Claimant Name (please print)

_James S. Caulfield_, EVP & General Counsel          9-11-08
Claimant's Signature                                  Date

James S. Caulfield
Claimant Name (please print)

_____          _____
Claimant's Signature                                  Date

**If needed, copy this page.**

21

EXHIBIT B                          Page 2 of 2

# EXHIBIT C

FINRA Dispute Resolution                                                          Arbitrator ID:    A11148

# Arbitrator Disclosure Report

Arbitrator information, other than the publicly available awards section, below, last amended on 01/14/2009

## ARBITRATOR

| | | |
|---|---|---|
| **Name:** | Mr. James H. Frank | **Skills in Controversy:** |
| **Arbitrator ID:** | A11148 | |
| **CRD #:** | | Account Related - Dividends, Account Related - Margin Calls, Account Related - Transfer, Executions - Execution Price, Executions - Limit v. Market Order, Employment - Breach of Contract, Employment - Commissions, Employment - Compensation, Employment - Discrim. Age, Employment - Discrim. Disability, Employment - Discrim. Gender, Employment - Discrim. National Origin, Employment - Discrim. Race, Employment - Discrim. Religion, Employment - Employment Discrimination, Employment - Discrim. Sexual Orientation, Employment - Libel or Slander, Employment - Partnerships, Employment - Promissory Notes, Employment - Retaliation, Employment - Sexual Harassment, Employment - Wrongful Termination, Other - Clearing Disputes, Other - Underwriting |
| **City/State/Country:** | Santa Barbara / CA / United States | |

| | | |
|---|---|---|
| **Classification:** | Public | **Skills in Securities:** |
| **FINRA Mediator:** | No | |
| **Chair Status:** | Qualified | Annuities, Common Stock, Corporate Bonds, Government Securities, Limited Partnerships, Mutual Funds, Municipal Bonds, Municipal Bond Funds, Preferred Stock, Real Estate Investment Trust, Stock Index Futures, Warrants/Rights |

**Injunctive Qualified -**   This arbitrator is an attorney and has reported experience litigating cases involving injunctive relief.

## EMPLOYMENT

| Start Date | End Date | Firm | Position |
|---|---|---|---|
| 01/1985 | Present | PRORESOLV Counsel, LLP | Reinsurance Cos./Atty/Med/Arb |
| 01/1980 | 12/1984 | Intercontinental Reinsurance | Senior Vice President/Director |

## EDUCATION

| Start Date | End Date | School | Degree |
|---|---|---|---|
| 01/1972 | 06/1975 | Southwestern University | JD |
| 01/1967 | 06/1969 | US Airforce Institute of Technology | MBA |
| 01/1964 | 06/1965 | USAF Pilot Training Programs | Major |
| 01/1959 | 06/1963 | University of California | BA |

## TRAINING

| Completed | Description | Details | Firm/School | Hours | Location |
|---|---|---|---|---|---|
| 12/2008 | Expungement - 2008 Refresher | | FINRA | 1 | |
| 03/2007 | Revised Code of Arbitration | | NASD | 2 | online |
| 08/2004 | Expungement online mini-course | | NASD | 1.5 | online |

EXHIBIT C                                    Page 1 of 3

FINRA Dispute Resolution                                                                                           Arbitrator ID:   A11148

| 06/1999 | New Chairperson Training [NASD] | | NASD | 11 | Tampa, FL |
| 02/1997 | New Panel Member Training [NASD] | | NASD | 11 | Los Angeles, CA |
| 10/1991 | Intro Securities Arbitrator Training | "Agents of Fairness" | NASD | 4 | |
| 12/1986 | Mediation Training | | Med. Academy- NYU, Fl. DRC | 100 | |
| 01/1984 | Non-Securities Related Training | (various trainings) | AAA & SPIDR | 200 | |

## DISCLOSURE/CONFLICT INFORMATION

| Type | Firm Name | Details |
| --- | --- | --- |
| Has an account with | TD Ameritrade Investor Services, Inc. | |
| Has an account with | USAA Financial Advisors, Inc. | USAA Brokerage |
| Licensed to Practice Law in | | California |
| Arbitrator for | | Florida |
| Licensed to Practice Law in | | Florida (inactive) |
| Licensed to Practice Law in | | New York (inactive) |
| Licensed to Practice | | Reinsurance Underwriter New York |
| Had an account with | TD Waterhouse Investor Services, Inc. | Waterhouse Securities, Inc. |

## PUBLICLY AVAILABLE AWARDS
### Publicly Available Awards Section, Current as of 01/16/2009

| Case ID | Case Name | Close Date |
| --- | --- | --- |
| 06-05086 | Elizabeth Luster, individually and as Trustee of The Elizabeth S. Luster Trust v. Morgan Stanley DW, Inc., et al. | 12/29/2008 |
| 06-04535 | Randy R. Bick and Bick Family Trust vs. Citigroup Global Markets, Inc. | 07/23/2008 |
| 07-02737 | Melanie Bruno v. AXA Advisors, LLC | 03/18/2008 |
| 06-03867 | Alfonso C. Pena, et al v. GBS Financial Corp., GBS Advisors, Donald G. Gloisten, and Gerard P. Gloisten | 09/07/2007 |
| 05-01850 | Sidney H. Goodman, et al. v. Leslie C. Stipek and Stipek Securities, LLC | 03/30/2006 |
| 03-00956 | Carl H. Will, in his ind. capacity & as cust., and Lisa Will in her ind. capacity v. Merrill Lynch, Pierce, Fenner/Smith | 01/24/2006 |
| 04-04027 | Fred D. Bisplinghoff IRA vs. Citigroup Global Markets, Inc. and Jack B. Grubman | 08/08/2005 |
| 04-04600 | Todd E. Schneider v. Citigroup Global Markets, Inc. f/k/a Salomon Smith Barney, Inc., and Jack B. Grubman | 08/01/2005 |
| 03-04852 | Joyce A. Stade and C. Richard Stade v. Citigroup Global Markets, Inc., and Jack B. Grubman | 06/27/2005 |
| 03-03324 | William Maselli and Jeanne Maselli, ind. and as ttees of the Maselli Trust dtd 2/19/01 v Salomon Smith Barney, Inc. et a | 05/23/2005 |
| 03-04644 | Michael Myers, M.D., TTEE of Michael Myers, M.D., P.A. PST, et al vs. Merrill Lynch, Pierce, Fenner & Smith, Inc., et al | 04/25/2005 |
| 04-07242 | Pat Desmond, Jr. and Ann Desmond v. Citigroup Global Markets, Inc. f/k/a Smith Barney, and Paul Pollard | 04/25/2005 |
| 04-02156 | Arnold Fagg and Karen Fagg v. Morgan Stanley DW, Inc., John Posey and John McKeehan | 03/24/2005 |
| 01-01447 | Emmett A. Herring, Jr. Revocable Trust Dated 12/27/91 vs. Merrill Lynch, Pierce Fenner & Smith, Inc., et al. | 02/08/2005 |

EXHIBIT C                              Page 2 of 3

FINRA Dispute Resolution                                                          Arbitrator ID:   A11148

| 03-00280 | Betty Ingram vs. Jack B. Grubman and Salomon Smith Barney, Inc. | 09/15/2004 |
| 03-07305 | Marjorie A. Fuller vs. Merrill Lynch, Pierce, Fenner & Smith Inc., Terry K. Glenn, and Merle P. Levy | 07/23/2004 |
| 02-06244 | Nancy Rogers, Trustee U/A DTD 10/3/96 vs. EWW Group a/k/a Emerson Waller Group, Richard "Dick" Emerson & Merrill Lynch | 04/19/2004 |
| 02-04365 | Joanne Keretz and Joanne Keretz Living Trust v. A.G. Edwards & Sons, Inc. and Frank Velten | 02/11/2004 |
| 02-04531 | Elizabeth M. Copeland, individually, et al v. Merrill Lynch Pierce, Fenner & Smith, Inc., a Delaware Corporation, et al | 01/15/2004 |
| 02-06497 | Angelo Barrera, et al v. E*Trade Securities, Inc., a/k/a E*Trade Group, Inc. a/k/a E*Trade Financial, etc. | 08/15/2003 |
| 02-06252 | Norman H. Jasper TTEE "The Jasper Trust" V. Merrill Lynch Pierce Fenner Smith Incorporated. | 05/01/2003 |
| 02-03357 | Robertson Stephens, Inc. v. Cory Chandler | 03/21/2003 |
| 02-00220 | William L. Reynolds, Claudette Cote Reynolds, and Marnan Group, Inc. v. Prudential Securities, Incorporated, et al. | 01/24/2003 |
| 99-05380 | Nance L. Outlaw v. Lawrence Jay, Long Securities Corp., et al | 04/10/2001 |
| 99-04339 | Maria J. Celaya, Nerio Celaya and Lillia C. Celaya v. NYLife Securities Inc. and Lee B. Nole | 04/04/2001 |
| 98-04162 | Terrence N. Latham vs. S.D. Cohn & Co. Inc., Roger Kapsalis and Schroder Wertheim & Co. Inc. | 08/23/2000 |
| 98-03685 | David W. Johnston vs. Investors Associates, Inc., Herman Epstein, Lawrence J. Penna, Daniel A. Sayid, Jr., et al. | 06/30/2000 |
| 99-02320 | Sheldon Wolf v. Discover Brokerage Direct | 03/07/2000 |
| 96-04899 | Jean Ward, TTEE/Jean Ward Living Trust v. Pacific Coast Financial Securities, Eric Morandini and Don Morandini | 12/31/1999 |
| 99-00695 | Mihaly Gaal and Ilona Gaal vs. A.G. Edwards & Sons, Inc. and Thomas Wilkinson | 12/01/1999 |
| 98-04513 | Stephen R. Birch vs. James Scott Marxer and Richard Preisig and Investors Associates, Inc. | 10/18/1999 |
| 97-05283 | Daniel B. Turner and Beatrice B. Turner, Trustees vs. PaineWebber, Inc., and Donna Payne | 08/28/1998 |

## ARBITRATOR BACKGROUND INFORMATION

Since 1984, I have worked as a facilitator, management consultant, and counsel, primarily to the reinsurance industry and risk retention groups including self-insurers. I have been a partner, managing director, and principal of both J.H. Frank and Associates and proResolv Counsel, performing these functions and additional requisite administrative tasks. Previously I was Senior Vice President and General Counsel of an international reinsurer, after working and underwriting in the insurance/reinsurance field from 1971, after separating from USAF as a pilot and Operations Officer (domestic and overseas).

I have mediated over 300 corporate disputes in my career and arbitrated in excess of 150 insurance and reinsurance cases to conclusion domestically and internationally. In addition to the above, I have drafted numerous treaties and certificates used for contractual purposes within the insurance and reinsurance industries. My firm currently serves its clientele from offices in New York, Florida, Washington, and California.

Publicly Available Awards Section, Current as of 01/16/2009

EXHIBIT C                    Page 3 of 3

# EXHIBIT D

04/24/2014 11:00 FAX 2027288894          FINRA-OGC                                    ☐001/003



**Financial Industry Regulatory Authority**

# FACSIMILE

| | | | |
|---|---|---|---|
| TO | William A. Issacson, Esquire | FROM | Terri Reicher |
| COMPANY | Boies, Schiller & Flexner LLP | FAX | 202 728-8894 |
| FAX | 202-237-6131 | TEL | 202 728-8967 |
| TEL | | | |
| DATE | April 24, 2014 | | |
| NUMBER OF PAGES INCLUDING COVER | 3 | | |

This fax transmittal is strictly confidentialiand is intended solely for the person or organization to whom it is addressed.

Investor protection. Market integrity.

1735 K Street, NW      t 202 728 8000
Washington, DC          www.finra.org
20006-1506

EXHIBIT D                          Page 1 of 3



Financial Industry Regulatory Authority

Terri L. Reicher
Associate Vice President
Associate General Counsel
Telephone (202) 728-8967
Fax (202) 728-8894
Terri.Reicher@finra.org

April 24, 2014

BY REGULAR MAIL AND BY FAX
(202) 237-6131
William A. Issacson, Esq.
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, NW
Washington, DC 20015

Re:     *Move, Inc. v. Citigroup Global Markets, Inc., FINRA Case No. 08-03355*

Dear Mr. Issacson:

I am responding to your letter dated April 11, 2014 to FINRA Dispute Resolution
President and Director of Arbitration Linda Fienberg, concerning arbitrator James H.
Frank, and your request that FINRA provide you with all documents concerning Mr.
Frank. FINRA's internal documents relating to Mr. Frank's background and any
investigation thereof are non-public, and we must decline your production request.

The arbitration at issue was presided over by a panel of three arbitrators, one of whom
was Mr. Frank. The award dated December 8, 2009 was unanimous. At the time the
parties selected Mr. Frank to serve on the panel, they were provided with disclosure
information that Mr. Frank provided to FINRA, the accuracy of which was reaffirmed by
Mr. Frank when he was appointed to the case. In August 2013, over four years after Mr.
Frank was appointed to the panel, FINRA learned that some of the credentials claimed
by Mr. Frank were in fact those of another individual also named James H. Frank, who is
also a California resident. Upon learning of the apparent discrepancy, FINRA
immediately removed Mr. Frank from all cases, and from the FINRA arbitrator pool.

FINRA takes very seriously its responsibilities to recruit qualified, unbiased arbitrators
and mediators, and has established safeguards to reduce the risk that neutrals will
inaccurately represent their backgrounds. For example, in October 2003, with the
approval of the Securities and Exchange Commission, we began verifying the
biographical information provided by all new applicants. In 2009-2010, we verified the
biographical information provided by all arbitrators approved to the roster prior to 2003,
and in August 2013, we began the process of re-verifying the backgrounds of the entire
FINRA active roster of over 6,400 individuals. Moreover, prior to adding a new arbitrator
to the roster, FINRA staff performs an internet search of the arbitrator, and performs
another internet search when that arbitrator is appointed to a case.

In addition to background verification, FINRA imposes substantial disclosure obligations
on its arbitrators. FINRA requires arbitrators assigned to cases to conduct an extensive
disclosure review and to sign an oath confirming completion of their review. FINRA

Investor protection. Market Integrity.           Office of General Counsel          t 202 728 8294
                                                  1735 K Street, NW               f 202 728 8894
                                                  Washington, DC                  www.finra.org
                                                  20006-1506

EXHIBIT D                              Page 2 of 3

04/24/2014 11:01 FAX   2027288894          FINRA-OGC                                      ☑003/003

William A. Issacson, Esq.
April 24, 2014
Page 2

routinely reminds all neutrals to make proper disclosures to keep their background
information up to date and accurate through, but not limited to, the following means:  the
Arbitrator Application; Arbitrator training courses; the Arbitrator's Guide; FINRA's
quarterly newsletter for arbitrators, "The Neutral Corner";  a "Notice to Arbitrators" mailed
to all active arbitrators on the roster; and recorded training sessions posted on our
website and referred to as "Neutral Workshops" dedicated to arbitrator disclosure.
FINRA also created an arbitrator disclosure page on FINRA's website; added disclosure
guidance in the cover letter sent with the Oath of Arbitrator form; added further guidance
to the arbitrator Disclosure Checklist; added guidance to the hearing scripts provided for
the arbitrators' use at hearings; and sent broadcast emails to all active arbitrators
reminding them of their duty to disclose.

Mr. Frank was approved as a FINRA arbitrator in 1991, and was included in the 2009-
2010 verification process for arbitrators approved before 2003.  The verification process
included confirmation of the California bar number supplied by Mr. Frank, and a
confirmation by Southwestern Law School that James H. Frank was a graduate. Neither
the California Bar nor Southwestern Law School verifies persons by their social security
number, which would have disclosed the discrepancy.  Mr. Frank obviously did not
comply with his disclosure obligations, and was able to evade detection due to the rather
unique circumstance of sharing the same first name, middle initial, and last name with an
individual whose credentials were already publicly available, and who lived in the same
metropolitan area as Mr. Frank.

FINRA's efforts to verify its arbitrators' backgrounds are ongoing, and we welcome any
suggestions you may have to further improve the program.

Very truly yours,

Terri L Reicher
Associate General Counsel

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

____Central____ District of __California__

| | | |
|---|---|---|
| MOVE, INC. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. **CV 14 - 04418 JFW (Ex)** |
| CITIGROUP GLOBAL MARKETS, INC. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*
Citigroup Global Markets, Inc.
C T Corporation System
Registered Agent of Service for Citigroup Global Markets, Inc.
818 West Seventh Street, 2nd floor, Los Angeles, CA 90017


A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Michael G. King and Susan J. Williams, Hennelly & Grossfeld LLP, 4640 Admiralty Way, Suite 850, Marina del Rey, CA 90292


If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.


CLERK OF COURT

Date: June 9, 2014                                      _____
                                                        *Signature of Clerk or Deputy Clerk*

DENISE VO

AO-440

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4(l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____                     _____
                                                                  *Server's signature*

                                                      _____
                                                                  *Printed name and title*

                                                      _____
                                                                  *Server's address*

Additional information regarding attempted service, etc:

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

MOVE, INC.

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

CITIGROUP GLOBAL MARKETS, INC.

**(b)** County of Residence of First Listed Plaintiff   Los Angeles
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   New York
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.
Michael G. King, Esq. (SBN 145477)/ Susan J. Williams, Esq. (82976)
Hennelly & Grossfeld LLP, 4640 Admiralty Way, Suite 850, Marina del Rey, CA 90292,
Tel: 310-305-2100; Fax: 310-305-2116
Email: mking@hgla.com/swilliams@hgla.com

Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☒ 3. Federal Question (U.S. Government Not a Party)
☐ 2. U.S. Government Defendant
☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)
☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Vacatur of arbitration award under 9 U.S. Section 10

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☒ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**   Case Number:   **CV 14 - 04418 JFW (Ex)**

CV-71 (06/14) | CIVIL COVER SHEET | Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes ☒ No<br><br>If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action?<br><br>☐ Yes ☒ No<br><br>If "no," skip to Question C. If "yes," answer Question B.1, at right. | B.1. Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Continue to Question B.2. |
| | B.2. Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action?<br><br>☐ Yes ☒ No<br><br>If "no," skip to Question D. If "yes," answer Question C.1, at right. | C.1. Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Continue to Question C.2. |
| | C.2. Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | A.<br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |

| D.1. Is there at least one answer in Column A? | D.2. Is there at least one answer in Column B? |
|---|---|
| ☐ Yes ☒ No | ☐ Yes ☒ No |
| If "yes," your case will initially be assigned to the<br><br>SOUTHERN DIVISION.<br><br>Enter "Southern" in response to Question E, below, and continue from there.<br><br>If "no," go to question D2 to the right. ➡ | If "yes," your case will initially be assigned to the<br><br>EASTERN DIVISION.<br><br>Enter "Eastern" in response to Question E, below.<br><br>If "no," your case will be assigned to the WESTERN DIVISION.<br><br>Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | Western |

| QUESTION F: Northern Counties? | | |
|---|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes | ☒ No |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court**?          ☒ NO          ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Is this case related (as defined below) to any cases previously filed **in this court**?          ☒ NO          ☐ YES

If yes, list case number(s): _____

**Civil cases are related when they:** (1) arise from the same or a closely related transaction, happening, or event; (2) call for determination of the same or substantially related or similar questions of law and fact; or (3) for other reasons would entail substantial duplication of labor if heard by different judges.  That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** Susan J. Williams          DATE: June 9, 2014

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended.  Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |